IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RICHARD S. TWETE, | CV 19-137-BLG-SPW-TJC |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE** |
| VALRENA M. NELSON, a/k/a VALRENA NELSON, a/k/a RENA NELSON, a/k/a RENA M. MULLIN, G&A ENTERPRISES, INC., G&A SERVICES, LLC, GA UNLIMITED, LLC, A&P ENTERPRISES, LLC, I&G ENTERPRISES, LLC, ZACHARY MULLIN, CATHIE BERGLUND, and DOES 8 – 20, | |
| Defendants. | |

Plaintiff Richard S. Twete ("Twete") filed this action against Valrena M. Nelson; five companies related to her, including G&A Enterprises, Inc., G&A Services, LLC, GA Unlimited, LLC, A&P Enterprises, LLC, and I&G Enterprises; and two individual defendants, Zachary Mullin and Cathie Berglund (collectively, "Defendants"). (Doc. 3.) Twete alleges nine causes of action related to the attempted collection on a judgment from North Dakota state court against Nelson, including the fraudulent transfer of assets to avoid payment of the judgment obligation (Counts 1-4), fraud and fraudulent scheme (Count 5), conspiracy to

1

defraud (Count 6), alter ego or instrumentality (Count 7), injunctive relief (Count 8), and punitive damages (Count 9).  (*Id.* at ¶¶ 46-93.)

Before the Court is Defendants' Motion to Dismiss Counts 1-6 under Fed. R. Civ. P. 9(b) for failure to state claims of fraud with particularity and Counts 7-9 under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[1]  (Docs. 18-25.)  Plaintiff has filed a combined response.  (Doc. 26.)  Having reviewed the parties' briefing, the Court recommends Defendants' motion be GRANTED in part and DENIED in part.

## I.    Factual Background

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual allegations set out in the complaint and draw inferences in the light most favorable to the plaintiff.  *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).  The Court also may consider documents attached and incorporated into the pleadings by reference.  *U.S. v. Ritchie*, 342

---

[1] Each Defendant has individually filed an identical motion to dismiss and attached a redundant brief in support as an exhibit.  (Docs. 18-25.)  The Court notes that despite the Clerk of Court's Notice of Correction (docketed April 1, 2020), alerting the parties to the requirement that briefs must be filed separately (as opposed to attached as exhibits), Defendants failed to do so.  This requirement stems from Local Rule 7.1, which also requires the moving party to note whether the motion is opposed.  Defendants failure to adhere to the Local Rules in these two ways would ordinarily result in denial of the motion without prejudice.  In the interest of judicial economy, however, the Court will render findings and recommendations on the merits.

F.3d 903, 908 (9th Cir. 2003).  Therefore, the following facts are taken from

Twete's Amended Complaint (Doc. 3), as well as documents incorporated by

reference, and accepted as true.

In September 2012, Twete was a farmer in North Dakota who executed

quitclaim deeds conveying his farmland and minerals to Clinton Mullin ("Mullin"),

the former husband of Defendant Valrena M. Nelson ("Nelson") and father to

Defendant Zachary Mullin ("Zachary").  (Docs. 3 at ¶¶ 8, 14; 3-2 at ¶¶ 2-3.)  The

conveyances were supposed to be temporary while an unrelated lawsuit between

Twete and his siblings was pending.  (*Id.* at ¶ 6.)  Mullin was then to return the

land and minerals to Twete on demand.  (*Id.*)  Instead, Mullin sold the mineral

interests to Bill Seerup and Hurley Oil Properties, Inc., for $600,000 in June 2013,

and executed deeds granting himself and Nelson joint tenancy in the farmland in

July 2013.  (*Id.* at ¶ 3.)  Mullin and Nelson then mortgaged the land with Farm

Credit Services.  (*Id.*)

Twete filed suit against Mullin, Nelson, and others in North Dakota's

Northwest Judicial District Court for Divide County in February 2015, alleging

breach of trust, among other claims, and seeking rescission of the property

transfers.  (Docs. 3 at ¶ 14; 3-2 at ¶ 3; see *Richard S. Twete v. Clinton R. Mullin, et

al.*, Case No. 12-2015-CV-00018 (N.W. Dist. N.D. 2015).)  At trial, the jury

returned a verdict in Twete's favor, finding Mullin committed a breach of trust and

awarded him $2,250,000 in monetary damages.  (Doc. 3 at ¶ 15.)  The court also

granted Twete's request for equitable relief and ordered Mullin and Nelson to

convey the farmland back to him and arrange for the release of the mortgage.  (*Id.*

at ¶ 16.)  The court found the amount owed on the mortgaged farmland to be

$975,392.37, as of May 2017.  (Doc. 3-2 at ¶ 4.)

     While Mullin and Nelson appealed to the North Dakota Supreme Court,

Twete filed the judgment in two Montana state district courts, where Nelson owned

various properties, to establish and foreclose a judgment lien and set aside any

resulting fraudulent transfers.  (Docs. 3 at ¶¶ 19-20, 37; 36-1; 36-2; see also

*Richard S. Twete v. Clinton R. Mullin, et al.*, Case No. DV-17-146 (7th Dist. Mont.

Oct. 21, 2020) and Case No. DV 17-1917 (13th Dist. Mont. Sept. 14, 2020).)  In

July 2019, the North Dakota Supreme Court affirmed the lower state court's

judgment.  (Docs. 3 at ¶ 21; 3-2; see *Twete v. Mullin et al.*, 2019 ND 184 (N.D.

2019).)

     Prior to the resolution of the North Dakota Supreme Court appeal and the

Montana district court actions, Twete filed the instant action alleging that Nelson

failed to satisfy her obligations under the judgment, totaling $1,084,572.16, as of

December 2019 (with interest accruing).  (Doc. 3 at ¶¶ 22-23.)  Central to Twete's

claims are nine limited liability companies in which Nelson was listed as a

principal by the Montana Secretary of State.  (*Id.* at ¶ 24.)  Nelson allegedly used

these entities to hide or shelter assets.  (*Id.* at ¶¶ 24, 47-88.)  These companies include five herein-named Defendants: G&A Enterprises, Inc., G&A Services, LLC, GA Unlimited, LLC, A&P Enterprises, LLC, and I&G Enterprises ("Nelson Companies").  (*Id.*)  The four remaining companies have been voluntarily dissolved: G&A Wrecker (July 2015), I&A Enterprises, LLC (January 2016), and IA Unlimited, LLC and WA Unlimited, LLC (February 2018).  (*Id.* at ¶ 27.)

During the North Dakota state district court action, Nelson testified at deposition and at trial that G&A Enterprises, LLC was her business; Twete alleges that Nelson was also the sole shareholder.  (*Id.* at ¶¶ 26, 28.)  The status of the remaining businesses, as well as Nelson's relationship to them, was unclear until after judgment was entered in North Dakota state district court (October 2017) and Twete served Nelson post-judgment discovery requests in January 2018.  (Doc. 3 at ¶ 29.)  Nelson admitted to the existence of G&A Enterprises and to her position as its president but denied any ownership interest.  (Docs. 3 at ¶ 30; 3-3 at 3.) Nelson also did not disclose any of the other Nelson companies.  (*See Id.*)  When asked to explain her relationship to various entities, including G&A Enterprises, Nelson denied any connection.  (Docs. 3 at ¶ 32; 3-3 at 6.)  Nelson also stated, "she has no responsive information" as to "any membership interest, stock, bonds, or other securities of any class in any company, firm, limited liability company, or corporation …."  (Doc. 3 at ¶ 38.)  Twete alleges this answer runs contrary to her

5

testimony at deposition and trial in the North Dakota state district court action and to public records of the Montana Secretary of State relating to the other eight Nelson Companies.  (*Id.* at ¶ 39.)  Twete alleges that Nelson transferred her stock in G&A Enterprises, and her interest in G&A Services, GA Unlimited, A&P Enterprises, and I&G Enterprises to avoid payment of the North Dakota judgment. (*Id.* at ¶¶ 40, 42.)

Other post-judgment interrogatories inquired as to property ownership and whether any sales, conveyances, or transfers of her real or personal property had occurred since February 2015.  (Docs. 3 at ¶¶ 31, 33; 3-3 at 4, 6-7.)  Nelson denied owning any property beyond Twete's farm and stated "she has no responsive information" as to sales of any other property.  (*Id.*)

Twete alleges that Nelson's responses to the discovery requests were false and identifies three properties in Montana that Nelson owned in 2015 but conveyed to GA Unlimited, LLC in 2019.  (Doc. 3 at ¶¶ 34-36.)  Twete alleges that the quit claim deeds conveying the property featured Nelson's notarized signature dated January 3, 2017, three months before the North Dakota state district court trial. (*Id.* at ¶ 35-36.)  But the instruments were not recorded until more than two years later, on August 12 and 15, 2019, about a month after the North Dakota Supreme Court affirmed the lower court judgment.  (*Id.*)

6

In October 2019, the Montana Seventh Judicial District Court, Richland County, issued a Writ of Execution against Nelson for the then-current judgment total of $1,066,778.16 (including interest).  (Docs. 3 at ¶ 41; 3-4.)  The Sheriff of Richland County served the Writ of Execution on November 8, 2019 and returned it "totally unsatisfied."  (Doc. 3-4 at 4.)  The return included the following comment, in pertinent part:

> Ms. Nelson was instructed to freeze her assets and if she had any they were to be turned over to me.  Reference other personal property she contends that they all have been transferred to another entity prior to the Writ being served. [*Sic*]

(*Id.*)  Twete alleges that Nelson's response to the Execution and her responses to the Post-Judgment Discovery Requests show her "attempt to hinder, delay or defraud [Twete] or avoid payment of her obligations to [him], including the Judgment."  (Doc. 3 at ¶ 42.)

On January 21, 2020, Twete conducted a Debtor's Examination of Nelson in connection with the default judgment action in the Montana Seventh Judicial District Court, Richland County.  (*Id.* at ¶ 43.)  Under oath, Nelson testified she did not know if she owned any interest in G&A Enterprises or who its other shareholders might be, or if she owned any interest in the other named-defendants in this case: G&A Services, GA Unlimited, A&P Enterprises, or I&G Enterprises.  (*Id.*)  Nelson stated she had no knowledge of transfers of any interests but also said she had transferred real property to GA Unlimited for estate planning purposes.

7

(*Id.*)  Nelson further testified that she did not know who owned GA Unlimited and that her home had been accidentally transferred to GA Unlimited.  (*Id.*)  Last, Nelson testified that she has no income and is unable to pay the judgment.  (*Id.*)

Ten days later, on January 31, 2020, Nelson's accountant produced some records relating to the Nelson Companies.  (*Id.* at ¶ 44.)  Records show that Nelson transferred 98 percent membership in G&A Services to Defendant Zachary Mullin.  (*Id.*)  The records also show inconsistent ownership of GA Unlimited; either Nelson transferred her membership interests to her mother, Defendant Cathie Berglund, or may still be the sole member.  (*Id.*)

Ultimately, both Montana district court actions resulted in default judgments in favor of Twete in September and October 2020.  (Docs. 36-1 & 36-2.)  Both actions found that Nelson conveyed her real properties to hinder, delay or defraud Twete to avoid payment of the judgment and ordered the transfers to be "avoided, annulled and set aside."  (Docs. 36-1 at ¶¶ 27-32; 36-2 at ¶¶ 27-35.)  Twete then filed the instant action seeking to collect on the North Dakota and Montana state court judgments, naming new co-defendants and causes of action.  (Doc. 3.)

## II.     Standard of Review

### A.     Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); see also *Chavez v. Bank of*

*America, N.A.*, 2010 WL 1854087 at *4 (E.D. Cal. 2010) (summarizing the legal standard to be applied to Rule 12(b)(6) motions to dismiss).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quotations and citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ..."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679. A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

### B. Fed. R. Civ. P. 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[T]he circumstances constituting the alleged fraud must 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that

10

they have done anything wrong.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th

Cir. 2001)).  To satisfy the requirements of Rule 9(b), a plaintiff who claims fraud

must state the "who, what, when, where, and how of the misconduct charged."

*Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019); *Vess v.*

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted).

"[A] plaintiff must set forth *more* than the neutral facts necessary to identify the

transaction.  The plaintiff must set forth what is false or misleading about a

statement, and why it is false."  *Vess*, 317 F.3d at 1106 (emphasis in original).

When multiple defendants are named, the plaintiff must "inform each defendant

separately of the allegations surrounding his alleged participation in the fraud."

*Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not

allow a complaint to merely lump multiple defendants together …").

## III.   Discussion

Defendants move the Court to dismiss Twete's Amended Complaint on the

following grounds: Counts 1- 5 are conclusory statements that only recite the

elements of fraudulent transfer or fraud without providing the specificity that Fed.

R. Civ. P. 9(b) requires; Count 6 relies upon an unreasonable inference that

representations were made specifically to Twete and the allegations are conclusory

without providing the specificity that Fed. R. Civ. P. 9(b) requires; Count 7 fails to

allege sufficient facts to state an alter ego claim; and Counts 8 and 9 fail to state a

claim because the previous six counts fail to establish the Defendants' liability. [2]

(Doc. 18-1 at 6-10.)

### A.    Counts 1 – 4: Fraudulent Transfer

Counts 1 through 4 of Twete's Amended Complaint allege fraudulent

transfers in violation of Montana statute.  In Counts 1 – 3, Twete alleges violations

of § 31-2-333, which provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor, whether the creditor's claim arose before or after the
> transfer was made or the obligation was incurred, if the debtor made the
> transfer or incurred the obligation:
>
>> (a) with actual intent to hinder, delay, or defraud any creditor of
>> the debtor; or
>>
>> (b) without receiving a reasonably equivalent value in exchange
>> for the transfer or obligation and the debtor:
>>
>>> (i) was engaged or was about to engage in a business or a
>>> transaction for which the remaining assets of the debtor
>>> were unreasonably small in relation to the business or
>>> transaction; or

---

[2] Defendants also urge the Court to stay proceedings to avoid conflict between the
instant suit and Twete's filings in Montana state district courts under the doctrine
of abstention.  It is not necessary to address Defendants' abstention argument.  The
two Montana state district court actions which were the basis for Defendants'
argument have been adjudicated since the filing of the present motions to dismiss.
(*See* Docs. 36, 36-1, 36-2.)

> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Count 4 alleges a violation of § 31-2-334(1), which provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Defendants take issue with Twete incorporating and re-alleging preceding paragraphs into Counts 1 – 4 of the Amended Complaint and argue that the counts themselves "simply regurgitate the statutory language specific to each count." (Doc. 18-1 at 6-7.)  They thus maintain that the allegations are conclusory and fall short of Rule 9(b) pleading requirements.  (*Id.* at 7.)  Twete argues that Rule 9(b) does not apply to claims under the Uniform Fraudulent Transfers Act ("UFTA"). (Doc. 26 at 18.)

As to the applicability of Rule 9(b) to claims of fraudulent transfer, at least three circuit courts have found such claims are subject to the heightened pleading standard.  See, *In re Lawson*, 791 F.3d 214, 217 & n.5 (1st Cir. 2015) (noting that Rule 9 is the appropriate pleading standard for a claim under the Rhode Island Uniform Fraudulent Transfer Act); *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (New York Uniform Fraudulent Conveyance Act); *Stoebner v. Opportunity Fin., LLC*, 909 F.3d 219, 225, 226 & n.6 (8th Cir. 2018) (Minnesota Uniform

13

Fraudulent Transfer Act).  In addition, at least two lower court decisions in the Ninth Circuit have found the heightened pleading standard applies to fraudulent transfer claims, citing an unpublished Ninth Circuit decision in *Nishibun v. Prepress Solutions,* 111 F.3d 138 (9th Cir. 1997).  See *Attebury Grain, LLC v. Grayn Co.,* 2015 WL 13688626 at *1 (C.D. Cal. October 9, 2015) (California Uniform Voidable Transactions Act), and *In Re Wallace*, 2013 WL 1681780 at *4 (Bankr. D. Idaho April 17, 2013) ("The heightened pleading requirement of Civil Rule 9(b) applies in state and federal fraudulent transfer claims.")  See also, 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1297 (4th ed. 2018) ("Claims of fraudulent transfer and fraudulent conveyance are also subject to the heightened standard of Rule 9(b).").

Nevertheless, this issue need not be resolved here since the allegations in support of Counts 1 – 4 satisfy Rule 9(b).  First, Twete effectively alleges facts in support of the elements of fraudulent transfer under §§ 31-2-333 and -334.  Twete alleges actual fraudulent intent to hinder, delay, or defraud Twete through concealed transfers of property and property interests to avoid obligations ordered by both North Dakota and Montana state district courts. (Doc. 3 at ¶¶ 40, 42, 46-49.)  Twete also alleges these transfers were made without equivalent value for the exchange to leave Nelson insolvent.  (*Id.* at ¶¶ 50-62.)

Second, Twete's allegations clearly recite the "who, what, when, where, and how of the misconduct charged." *Becerra*, 945 F.3d at 1228.[3]  Twete alleges Nelson was a principal in the Nelson Companies, and that her interests in those entities were transferred to avoid paying her obligation to Twete.  (Doc. 3 at ¶¶ 40, 42.)  Twete also identifies transfers of specific property in Richland and Yellowstone Counties, as well as transfers of G&A Services and GA Unlimited, to specific defendants: other Nelson Companies, Cathie Berglund, and Zachary Mullin.  (Doc. 3 at ¶¶ 35-36, 39-40, 42-44.)  These allegations satisfy the "who" and "what" requirements and serve to inform each of Defendants of the allegations surrounding their alleged participation in the fraudulent transfers.  *Swartz*, 476 F.3d at 764-65.

Next, Twete provides when the transfers are alleged to have occurred.  (See *Id.* at ¶¶ 35-36, 44.)  Twete alleges that at the time of filing the North Dakota action on February 19, 2015, Nelson was a principal in the Nelson companies, and that as of February 20, 2018 she had transferred her interest in those entities.  (Doc. 3 at ¶¶ 24, 40.)  Twete also alleges specific dates for the transfers of the Richland County and Yellowstone County properties, and for the transfer of her interest in

---

[3] Defendants' objection to Twete incorporating and re-alleging prior facts into each claim lacks merit; there is no requirement a party must repeat individual allegations for each cause of action.  Defendants offer no authority to the contrary.

G&A Services to her son Zachary. (*Id.* at ¶¶ 35, 36, 44.) Less specificity was given as to the date of transfer of GA Unlimited to Cathie Berglund, but the Amended Complaint makes clear it occurred sometime between February 2015 and February 2018. (*Id.* at ¶¶ 24, 40.)

Last, Twete makes sufficient allegations relating to the "where" and "how" of the misconduct charged. Twete identifies specific quit claim deeds Nelson executed for properties located at specific addresses in Montana, and specific Montana companies that Nelson organized that were involved either in receiving allegedly fraudulent transfers of property or were themselves the subject of the allegedly fraudulent ownership transfer. (*Id.* at ¶¶ 35-36, 43-44.) As previously noted, Twete alleges Nelson testified that she was insolvent. (*Id* at ¶ 43.)

Therefore, the Court finds that Twete has satisfied Rule 9(b) and recommends Defendants' motion to dismiss as to Counts 1 – 4 be denied.

### B.    Count 5 – Fraud and Fraudulent Scheme

Count 5 alleges claims of fraud and fraudulent scheme. (Doc. 3 at ¶¶ 63-73.) Federal courts look to state law to see whether the elements of fraud have been pled sufficiently. *Kearns*, 567 F.3d at 1126. In Montana, fraud consists of the following nine elements:

> (1) a representation; (2) falsity of representation; (3) materiality of that representation; (4) speaker's knowledge of falsity of representation or ignorance of its truth; (5) the speaker's intent that it should be relied on; (6) the hearer is ignorant of the falsity of the

representation; (7) the hearer relies on the representation; (8) the
hearer has a right to rely on the representation; and (9) consequent and
proximate injury was caused by reliance on the representation.

*First Nat'l Bank in Havre v. Nelson*, 741 P.2d 420, 421 (Mont. 1987); *Fossen v.*

*Fossen*, 311 P.3d 743, 745 (Mont. 2013).

Defendants argue that the allegations in Count 5 are conclusory and merely
recite the elements of a fraud claim without presenting facts to show that fraud
occurred.  (Doc. 18-1 at 7-8.)  Defendants further assert Twete's allegations
relating to Nelson's transfers and their effect on her insolvency do not translate to a
representation made to Twete.  (*Id.* at 7.)

Twete generally argues that he has pled fraud with specificity but does not
appear to assert specific arguments relating to the elements of fraud, other than to
say the allegations give suitable notice to the adverse parties and identify how and
when Nelson made false statements.  (*See generally* Doc. 26 at 22-25.)

The Court finds Twete has sufficiently pled the all but the seventh and ninth
elements of fraud under Rule 9(b) standards, falling short on reliance on the
misrepresentation and injury caused by such reliance.

With respect to the satisfied elements of fraud, the allegations of the
Amended Complaint serve to give adequate notice to Defendants.  Twete alleges
that Nelson made false representations during post-judgment discovery, a debtor's
examination, and through filings with the Montana Secretary of State.  (Doc. 3 at

17

¶¶ 24, 28-34, 39, 43, 65-66.)  For example, Twete alleges that Nelson falsely answered two interrogatories (nos. 7 and 13) relating to her property ownership and recent transfers of property.  (*Id.* at ¶¶ 31, 33-34; *see* Doc. 3-3.)  Twete then identifies the properties and the transfers, and circumstances surrounding the transfers.  (*Id.* at ¶¶ 34-36, 43-44, 64-65.)  Since these alleged misrepresentations related to the ownership and status of Nelson's property, they were also material to Twete's collection efforts.

Next, Twete alleges Nelson knew her representations or related concealments were false and misleading.  (*Id.* at ¶ 69.)  In support, Twete advances Nelsons answers or testimony that runs contrary to particularized facts alleging ownership in Nelson Companies, transfers of real property and ownership interests in Nelson Companies to other Nelson Companies or insiders, and dates that frame a timeline supporting that Nelson plausibly knew the statements were false.  (*Id.* at ¶¶ 24, 28-36, 38-43, 64-65.)  Twete further alleges that he didn't know Nelson's various representations were false until her responses to post-judgment discovery requests were contradictory.  (*Id.* at ¶¶ 39-40, 70.)  Last, incorporated documents support Twete's right to collect on judgments against Nelson.  (*See* Docs. 3 at ¶¶ 17, 19-23, 29; 3-1, 3-4.)

As to the requirements for reliance and proximate injury, however, the allegations are not sufficient.  Twete generally alleges that he relied on Nelson's

false representations in determining his course of dealing and litigation decisions. (Doc. 3 at ¶ 71.) But Twete does not explain with particularity how he relied on Nelson's false representations in the context of making decisions in pursuit of collecting obligations from Nelson or any of the other Defendants, and how he was injured by such reliance. In reviewing the Amended Complaint, the Court cannot identify any specific allegations addressing detrimental reliance, and Twete's briefing advances no argument on the issue.

Several circuit courts, including an unpublished decision from the Ninth Circuit, have recognized that reliance must be plead with particularity. See, *Great Pacific Securities v. Barclays Capital, Inc*, 743 Fed.Appx. 780, 782 (9th Cir. 2018) (affirming dismissal of complaint which failed to plead reliance with particularity); *Xia v. McAuliffe*, 927 F.3d 177, 184 (4th Cir. 2019) (detrimental reliance is an essential element of a claim for fraud and must be pleaded with particularity); *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 852-3 (6th Cir. 2006) ("Conclusory statements of reliance are not sufficient to explain with particularity how [plaintiff] detrimentally relied on the alleged fraud."); *Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 401-02 (2nd Cir. 2001) (affirming dismissal of fraud claim for failure to sufficiently plead reliance on misrepresentation). But see, *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993) (reliance not required to be plead with particularity).

19

Therefore, the Court finds that Twete's allegations fail to satisfy Rule 9(b)'s pleading requirements for the seventh and ninth elements of fraud: reliance on the representation, and consequent and proximate injury caused by reliance on the representation. *Nelson*, 741 P.2d at 421. The Court recommends Defendants' motion to dismiss Count 5 be granted without prejudice to allow Plaintiff an opportunity to cure the deficiency.

## C.    Count 6 – Conspiracy to Defraud

In Montana, a plaintiff must allege the following elements to state a claim for civil conspiracy: "(1) two or more persons, (2) with an object to be accomplished; (3) had a meeting of the minds on the object or course of action; (4) conducted one or more unlawful overt acts; and (5) damages were the proximate result of the conduct." *T-4 Corp. v. McDonalds Corp.*, 2017 WL 3037422, at *7 (D. Mont. July 17, 2017) (citing *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373 (Mont. 1998); *Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 530 (Mont. 1993)).

Defendants argue Twete's allegations are conclusory and fail to satisfy the Rule 9(b) pleading standard. (Doc. 18-1 at 8.) Twete appears to argue that Rule 9(b)'s heightened pleading standard does not apply, and conclusory allegations are sufficient. (Doc. 26 at 23-24.)

The Ninth Circuit applies the Rule 9(b) pleading standard to a claim of conspiracy "if the object of the conspiracy is fraudulent." *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006). This comports with the Ninth Circuit's rule that Rule 9(b) applies to "all averments of fraud," which includes those claims grounded or sounding in fraud. *Vess*, 317 F.3d at 1103-1104. As Twete points out in his own briefing, "it is not the conspiracy itself that gives rise to the cause of action; it is the torts committed or the wrong done in furtherance of a civil conspiracy that do so." (Doc. 26 at 23, citing *Duffy v. Butte Teachers' Union Number 332, AFL–CIO*, 541 P.2d 1199, 1202 (1975)). Here, Count 6 claims Nelson, Cathie Berglund, Zachary Mullin, and Doe Defendants committed conspiracy to defraud Twete. (Doc. 3 at ¶¶ 74-81.) Therefore, it is the civil tort of fraud that gives rise to Count 6, and the allegations in support must meet the Rule 9(b) pleading standard.

The Court finds that Twete's Amended Complaint fails to do so. Twete's allegations in support of the claim do not state with any sort of specificity the "who, what, when, where, and how of the misconduct charged." *Becerra*, 945 F.3d at 1228. Even if the Court accepted Twete's identification of the defendant-parties involved (Nelson, Zachary Mullin, Cathie Berglund) – the who – the Amended Complaint is bereft of any factual allegation supporting the elements of conspiracy. As it is, Twete's allegations are bare and conclusory.

21

Therefore, the Court recommends Defendants' motion to dismiss Count 6 be granted without prejudice.

### D.     Count 7 – Alter Ego or Instrumentality

The Montana Supreme Court requires that two factors be present to pierce the corporate veil: (1) the corporation is a mere agent or alter ego of the parent company, and (2) the corporation was used to defeat public convenience, justify wrong, perpetrate fraud, or to defend crime. *Churchill v. Trinity Universal Ins. Co.*, 2010 WL 11468358, at \*3 (D. Mont. Mar. 2, 2010); *Hando v. PPG Industries*, 771 P.2d 956, 960 (Mont. 1998). A plaintiff can show alter ego if the affairs of the parent-subsidiary are so intertwined that they don't have a separate identity. *Hando*, 771 P.2d at 960. In conducting this analysis, the Montana Supreme Court considers many factors, including ownership, use of the same people as directors or officers, day-to-to day business activities, sharing of name/address, commingling of funds, undercapitalization, and failure to maintain separate business records. *Id.* In *Peschel Family Trust v. Colonna*, for example, the Montana Supreme Court found an alter ego relationship where an individual was the sole stockholder and exercised control over all decisions, used corporate money to pay personal debts, and engaged in suspect transactions. *Peschel Family Trust v. Colonna*, 75 P.3d 793, 798 (Mont. 2003).

22

Defendants argue that Twete's allegations are conclusory and fail to state a claim.  (Doc. 18-1 at 9.)  Twete argues that he has alleged specific facts stating a claim for piercing the corporate veil.  (Doc. 26 at 27-28.)

In his Amended Complaint, Twete alleges that Nelson exercises dominion and control over the Nelson Companies and their property and used them to hide and shelter personal assets or assets of the other Nelson Companies.  (Doc. 3 at ¶ 83.)  Twete alleges that at the time the original North Dakota state district court action was filed in 2015, Nelson was the principal for nine companies organized in Montana and the sole shareholder in G&A Enterprises.  (Doc. 3 at ¶¶ 24, 26.)  Later, however, Twete alleges Nelson disavowed interest in the entities and allegedly transferred her personal interest in the entities for little or no consideration.

The Court finds that Twete has alleged sufficient facts showing that the Nelson companies were plausibly the alter ego of Nelson.  Twete's allegations relative to Nelson's alleged control over the entities and her apparent ability to unilaterally transfer her interests to other family members plausibly show the sort of intertwining of personal and business interests and activities, dominion and control, and suspect transactions that the Montana Supreme Court considered in *Peschel Family Trust*.

23

The Court also finds that Twete has alleged facts that make the second element plausible as well.  "There must be substantial evidence from which the trier of fact may find that the corporate entity was used as a subterfuge to … justify wrong or perpetrate fraud."  *Churchill*, 2010 11468358 at \*4 (quoting *Peschel Family Trust*, 75 P.3d at 799).  As the Court previously analyzed, Twete met the heightened pleading standard for fraudulent transfer (Counts 1-4), and the allegations also serve to plausibly show that Nelson used the Nelson Companies to perpetrate fraud.

Therefore, the Court finds that Twete has stated a claim for piercing the corporate veil under a theory of alter ego and recommends that Defendants' motion to dismiss Count 7 be denied.

### E.     Counts 8 and 9 – Injunctive Relief and Punitive Damages

Defendants argue that Counts 8 and 9 fail to state a claim because all other counts fail.  (Doc. 18-1 at 9-10.)  Twete argues that since the Amended Complaint is sufficient, and Counts 8 and 9 are derivative, they too state a claim.

Under Montana law, "when it appears that the adverse party, during the pendency of the action, threatens or is about to remove or to dispose of the adverse party's property with intent to defraud the applicant, an injunction order be may granted to restrain the removal or disposition."  Mont. Code Ann. § 27-19-201(4).  The Court has found that Twete's Amended Complaint has satisfied Rule 9(b) in

alleging fraudulent transfers in Counts 1-4.  Those Counts allege and specify

ongoing efforts by Nelson to remove or dispose of property to avoid paying the

North Dakota judgment.  Thus, Twete has stated a plausible claim that an

injunction is necessary to prevent the removal or disposition of any additional

property during the pendency of this action, and the Court recommends

Defendants' motion to dismiss Count 8 be denied.

As to Count 9, the Court finds that given the survival of Counts 1-4 and 7,

Twete may pursue his claim for punitive damages under Mont. Code. Ann. § 27-1-

220.  Therefore, the Court recommends that Defendants' motion to dismiss Count

9 be denied.

## IV.    Conclusion

The Court finds that Twete's fraudulent transfer claims in Counts 1 – 4 of

the Amended Complaint meet the heightened pleading standards of Fed. R. Civ. P.

9(b).  But Twete's claims for fraud and conspiracy to defraud in Counts 5 and 6

fail to meet the particularity requirement of Rule 9(b).  The Court further finds

Twete's claims to pierce the corporate veil and for injunctive relief in Counts 7 and

8 properly state a claim under Fed. R. Civ. P. 12(b)(6).  Additionally, since Counts

1-4 and 7 are not subject to dismissal, Twete may proceed on his claim for punitive

damages in Count 9.  Therefore,

IT IS RECOMMENDED that Defendants' Motions to Dismiss (Docs. 18-25) be GRANTED as to Counts 5 and 6 and DENIED as to all other claims.

IT IS FURTHER RECOMMENDED that Counts 5 and 6 be DISMISSED without prejudice and with leave to amend.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 14th day of December, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

26